IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:09-CT-3115-FL

| ANTHONY RODERICK PHILLIP, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | ORDER |
| GEO GROUP, INC.; GEORGE E. SNYDER; W. BRANCH; T. ALEXANDER; JOHN WHITE; BUREAU OF PRISONS; HARLEY LAPPIN; and JONATHAN MINER, | ) | |
| Defendants. | ) | |

This matter came before the court on the motion for summary judgment (DE # 167) pursuant to Federal Rule of Civil Procedure 56 filed by defendants Federal Bureau of Prisons ("BOP") and Harley Lappin ("Lappin") (collectively "BOP defendants"). Also before the court is the motion for reconsideration and motion for certification for immediate appeal (DE # 171) filed by defendants the GEO Group, Inc. ("GEO Group"), Jonathan Miner ("Miner"), George Snyder ("Snyder"), Wallace Branch ("Branch"), Tara Alexander ("Alexander"), and John White ("White") (collectively "GEO defendants").[1] These matters are ripe for adjudication. For the following reasons, the court grants BOP defendants' motion for summary judgment and denies GEO defendants' motion for reconsideration and for certification for immediate appeal.

---

[1] Miner, Snyder, Branch, White, and Alexander are employees of the GEO Group. The GEO Group is a private corporation which operates Rivers Correctional Institution, a privately run facility where plaintiff resides.

## STATEMENT OF THE CASE

Pursuant to plaintiff's September 2, 2009, amended complaint, he alleges an action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), against BOP defendants based upon their alleged deliberate indifference to second-hand smoke at Rivers Correctional Institution ("Rivers"). Plaintiff's amended complaint also alleges an equal protection and a negligence claim against BOP defendants. Finally, plaintiff, in his amended complaint, asserts a negligence claim, based upon diversity jurisdiction under 28 U.S.C. § 1332, against GEO defendants for confining him at a facility that permits smoking. Plaintiff alleges GEO defendants are liable pursuant to the doctrine of respondeat superior and that GEO defendants breached their contract with BOP. Plaintiff's amended complaint alleges defendants' conduct resulted in "headaches, shortness of breath, irritation of his eyes and nose, chest pains and exacerbation of his allergies," as well as "an increased risk of contracting lung and heart disease and other ailments stemming from Second Hand Smoke, both now and in the future." Am. Compl. p. 8.

Both GEO and BOP defendants filed dispositive motions seeking dismissal of plaintiff's claims, which were fully briefed. BOP defendants' motion to dismiss argued that, pursuant to Rule 12(b)(1), the court lacked subject matter jurisdiction, and that pursuant to Rule 12(b)(6), plaintiff failed to state a claim upon which relief may be granted. In response to BOP defendants' motion to dismiss, plaintiff consented to dismissal of his equal protection and negligence claims, stating that he seeks only declaratory and injunctive relief based upon his Eighth Amendment claim. On March 31, 2011, the court denied BOP defendants' motion to dismiss and allowed plaintiff to voluntarily dismiss his equal protection and negligence claims against BOP defendants.

GEO defendants filed a motion for summary judgment, arguing that plaintiff's negligence claim fails because plaintiff was unable to establish proximate cause. Specifically, GEO defendants argued plaintiff failed to provide the necessary expert testimony to establish that the alleged exposure to second-hand smoke proximately caused his alleged injuries.[2] In its March 31, 2011, order, the court denied GEO defendants' motion on grounds that plaintiff alleged a genuine issue of material fact when he attached medical records to his sur-reply stating that "tobacco smoke is a trigger" to his asthma. (D.E. # 162, Attach. p. 20.) The court then appointed North Carolina Prisoner Legal Services to represent plaintiff.

On April 7, 2011, BOP defendants filed a motion for summary judgment, arguing that plaintiff's Eighth Amendment claim against them for injunctive and declaratory relief must be dismissed as moot. Plaintiff responded that his action against these defendants is not moot because voluntary cessation of wrongful behavior after a lawsuit is filed does not automatically moot a case or controversy. Plaintiff also alleges that there is an exception to the mootness doctrine where the dispute is capable of repetition, yet evading review.

On April 11, 2011, plaintiff, BOP defendants, and GEO defendants filed a joint motion to reopen discovery, asserting that plaintiff previously was not represented by counsel and did not serve any discovery on any defendants. The court granted the joint motion and allowed a five-month

---

[2] GEO defendants' motion for summary judgment was their third such motion. The first motion was based primarily on procedural grounds. GEO defendants' second motion incorporated from their first motion the argument that they are not susceptible to suit under the <u>Bivens</u> doctrine, and also argued that plaintiff's negligence claim was without merit because plaintiff's medical records demonstrate that there is no proximate cause between plaintiff's exposure to tobacco smoke and his alleged injuries. The court recognizes the somewhat muddled progress of this case and has endeavored to address herein an orderly approach for disposition of any motion after the conduct of discovery. Reference also is made to the detailed procedural history set forth in this court's March 31, 2011, order.

period of discovery. The court, however, stayed discovery pending its decision on the instant matters.

On April 28, 2011, GEO defendants filed a motion for reconsideration and motion for certification for immediate appeal. GEO defendants argue that the court erred in its March 31, 2011, order by: (1) allowing plaintiff to argue that his asthma was caused by exposure to second-hand smoke through his responses to their motion for summary judgment when asthma was not among the issues raised in his first amended complaint; (2) allowing plaintiff's claim to proceed past summary judgment without any medical records or expert testimony that supports the causation element of his claim; and (3) allowing plaintiff to create a genuine issue of material fact by submitting a document that did not exist until well after the discovery period ended and is based entirely on plaintiff's own statements about his medical issues. In response, plaintiff argues that he is not required to present expert testimony at this time and that he does not specifically need to plead asthma. Finally, plaintiff denies that the evidence he submitted was based entirely on his own statement. The issues raised have been fully briefed.

## DISCUSSION

A.      BOP Defendants' Motion for Summary Judgment

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material

4

fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

BOP defendants argue that plaintiff's claim for injunctive relief should be dismissed as moot because, on November 1, 2010, GEO Group implemented a policy prohibiting smoking at Rivers.[3] Thad Hubler Decl. ¶ 2. Federal courts may only decide actual cases or controversies. See U.S. Const. art. III, § 2. A "case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496 (1969). "The requisite personal interest that must exist at the commencement of the litigation . . . must continue throughout its existence." United States Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980) (quotation omitted). To satisfy the Article III case or controversy requirement, "[a] litigant must have suffered some actual injury that can be redressed by a favorable judicial decision." Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67, 70-71 (1983). When a case or controversy ceases to exist, the litigation becomes moot and the federal court no longer possesses jurisdiction to proceed. Id.

A case, however, is not necessarily mooted by a defendant's voluntary cessation of allegedly offensive conduct. United States v. Jones, 136 F.3d 342, 348 (4th Cir. 1998) ("voluntary discontinuance of challenged activities by a defendant does not necessarily moot a lawsuit."). Rather, the standard for determining whether a case has been mooted by a defendant's voluntary conduct is stringent: "A case might become moot if subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Friends of the Earth,

---

[3] The November 1, 2010, policy amended Rivers' January 11, 2002, policy which allowed smoking in designated areas. See Ex. D to Am. Compl.

5

Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 169 (2000) (quotation and citation omitted). The party requesting a dismissal for mootness bears the "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to recur." Id. at 170 (quotation and citation omitted).

Plaintiff contends that his action against BOP defendants is not mooted by Rivers amending its policy to become a smoke-free facility because there is a reasonable expectation that plaintiff will be placed in a smoking environment either through transfer or by Rivers reverting to a policy allowing smoking. However, courts generally have found that amendment of a challenged regulation, such as the Rivers' smoking policy, makes it less likely that a plaintiff would be subject to future harm. See Pressley Ridge Schs. v. Shimer, 134 F.3d 1218, 1221 (4th Cir. 1998) (noting that an agency's amending the challenged regulation made it less likely that the alleged injury would be repeated); MCIMetro Access Transmission Services of Virginia, Inc., 310 F. App'x 601, 605 (4th Cir. 2009); Ali v. Bennett, No. 5:04-CT-948, 2006 WL 4148008, *3 (E.D.N.C. May 25, 2006), aff'd, 204 F. App'x 321 (4th Cir. Nov. 6, 2006). Further, there is no evidence in the record that plaintiff has been exposed to second-hand smoke since enactment of the smoking ban, or that Rivers is likely to revert to a policy allowing smoking. See MCIMetro Access Transmission Services of Virginia, Inc., 310 F. App'x at 605.

As for plaintiff's claim that he could be transferred to another facility that allows smoking, the court finds this insufficient to demonstrate that, if this occurred, there is a reasonable likelihood that his constitutional rights would be violated. Most importantly, plaintiff does not have a constitutional right to be free from exposure to any second-hand smoke. See Helling v. McKinney, 509 U.S. 25, 36 (1993) (Stating that level of exposure to environmental tobacco smoke must

"[violate] contemporary standards of decency to expose anyone unwillingly to such a risk."); Mills v. Clark, 229 F.3d 1143, 2000 WL 1250781, *5 (4th Cir. Sept. 5, 2000) ("*Helling* does not guarantee plaintiff a smoke free environment . . .") Rather, an inmate's exposure to second-hand smoke may give rise to an Eighth Amendment claim if he is exposed to unreasonable levels of second-hand smoke and prison authorities are deliberately indifferent to the exposure. See, e.g., Helling, 509 U.S. at 35; Tudor v. Harrison, 195 F. App'x 160, 161 (4th Cir. 2006) (per curiam).

BOP's policy regarding smoking allows each institution's warden to determine whether smoking is permitted at their facility. Fed. Bureau of Prisons Program Statement P1640.04, Section 8(a-b), page 5. If smoking is permitted, it is only permitted in specifically designated outdoor smoking areas.[4] Accordingly, even if plaintiff is transferred from Rivers, which has imposed a complete smoking ban, to a BOP facility in which smoking is permitted in outdoor designated areas, there is no evidence that plaintiff would be exposed to second-hand smoke. Based upon this evidence, BOP defendants have met their burden demonstrating that they will not return to their former policy of allowing inmates to smoke at Rivers.

Plaintiff alternatively contends that this case is not moot because the challenged conduct is capable of repetition, yet evading review. "The capable-of-repetition, doctrine applies only in exceptional situations, where the following two circumstances simultaneously are present: (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." Spencer v. Kemna, 523 U.S. 1, 17 (1998) (internal citations and quotations omitted).

---

[4] BOP policy requires that wardens must designate smoking areas for authorized inmate religious activity. Fed. Bureau of Prisons Program Statement P1640.04, Section 8(a-b), page 5.

7

The Rivers smoking policy, which permitted smoking at Rivers, was implemented in January 2002, and the smoking ban was not implemented until November 2010. See Ex. D to Am. Compl. Accordingly, Rivers did not change its smoking policy for more than eight years, and there is no evidence that the nature of Rivers' former smoking policy was too short in duration to be fully litigated prior to cessation of the policy. Moreover, as stated, there is no evidence that the challenged conduct might reasonably be expected to recur. Thus, this exception to the mootness doctrine does not apply, and the BOP defendants' motion for summary judgment is GRANTED.

B.  GEO Defendants' Motion for Reconsideration

Pursuant to Rule 54(b), in the absence of an express order directing final judgment as to certain claims or parties:

> [A]ny order or other decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed.R.Civ.P. 54(b). Under this rule, "a district court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment when such is warranted." Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514-515 (4th Cir. 2003) (citing Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1469 (4th Cir. 1991)).

"Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment." Id. at 514. Rather, the resolution of such motions is "committed to the discretion of the district court." Id. at 515. As a means of guiding that discretion, courts have looked to "doctrines such as law of the case," under which a

8

Case 5:09-ct-03115-FL   Document 183   Filed 10/18/11   Page 8 of 17

prior dispositive order must be followed unless "(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." Id. (quoting Sejman v. Warner-Lambert Co., Inc., 845 F.2d 66, 69 (4th Cir. 1988)).

Similarly, courts applying Rule 54(b) have borrowed factors from Rule 59(e) and Rule 60(b), which include (1) evidence not previously available has become available, (2) an intervening change in the controlling law, (3) a clear error of law or manifest injustice, (4) mistake, inadvertence, surprise, or excusable neglect, or (5) any other reason justifying relief from the operation of the judgment. See Fayetteville Investors, 936 F.2d at 1469 (noting use by some district courts of reasons set out in Rule 60(b) in deciding motions to reconsider under Rule 54(b)); Superior Bank v. Tandem Nat'l Mortg., 197 F.Supp.2d 298, 332 (D. Md. 2000) (citing and referring to Rule 59(e) and Rule 60(b) factors). GEO defendants base their motion for reconsideration upon their contention that the court committed clear error in ruling upon their third motion for summary judgment. The court considers GEO defendants' arguments in the sections that follow.

        1.        Improper Amendment of Complaint

GEO defendants first contend that the court erred by allowing plaintiff to argue his asthma was caused by exposure to second-hand smoke through his response to their motion for summary judgment, when asthma was not among the issues raised in his first amended complaint. GEO defendants are correct in their assertion that plaintiffs may not "raise new claims without amending their complaints after discovery has begun." Barclay White Skanska, Inc. v. Battelle Mem. Inst., 262 F. App'x 556, 563 (4th Cir. 2008). Rather, the only way to raise new claims after discovery has

9

begun is through amendment of the complaint. Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 617 (4th Cir. 2009) (citation omitted).

Plaintiff, however, argues that his asthma injury is within the scope of his amended complaint and not an attempt to amend his complaint. To satisfy the notice-pleading standard of Federal Rule of Civil Procedure 8, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief," which is sufficient to provide the defendant with "fair notice" of the claim and its basis. Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) and quoting Fed.R.Civ.P 8(a)(2)). For *pro se* complaints, the court is required to liberally construe them and hold them to a less stringent standard than formal pleadings drafted by attorneys. Erickson, 551 U.S. at 94 (citation omitted).

GEO defendants place heavy reliance upon the Fourth Circuit's decision in Barclay White to support their assertion that plaintiff's complaint of asthma is not within the scope of his pleadings. Barclay White involved a dispute over a construction contract between a general contractor, Barclay White, and a business owner, Battelle, "which provided that Battelle would pay Barclay White a contractor's fee and the cost of work to manage the construction of a technology center." Barclay White, 262 F. App'x at 557. The contract included a Guaranteed Maximum Price ("GMP") of $13,350,000, but the GMP could be increased if Battelle approved change orders submitted by Barclay White. Id. at 557-58. Over the course of the contract, Barclay White submitted several change orders which were approved and paid, but not executed. Id. at 558. As a result of the failure to execute the change orders, the GMP never officially increased. Id. Due to the failure to execute the change orders, the actual value of the construction project exceeded the GMP. Id. Barclay White sued Battelle to recover the remaining amount it claimed it was owed. Id.

10

The district court in <u>Barclay White</u> limited the scope of Barclay White's breach of contract claim to three change orders and rejected Barclay White's attempt to argue, in response to Battelle's motion for summary judgment, that it was entitled to $204,454 in disputed change orders.[5] The Fourth Circuit affirmed the district court's decision to exclude Barclay White's claim to $204,454 in disputed change orders, finding that Barclay White's pleadings did not provide Battelle notice of his claim and that, once discovery has begun, plaintiffs may not raise new claims without amending their complaints. <u>Id.</u> at 563. The Fourth Circuit reversed the district court's narrowing of Barclay White's breach of contract claim to include only the three change orders. <u>Id.</u> The Fourth Circuit, however, found that Barclay White's general allegations regarding "extra work" in his amended complaint pleaded a more general breach of contract claim encompassing a claim for money withheld by Battelle due to unfinished work. <u>Id.</u> at 564.

In this case, plaintiff alleges in his amended complaint that defendants' conduct resulted in headaches, shortness of breath, chest pains, exacerbation of his allergies, irritation of his eyes and nose, as well as an increased risk of contracting lung disease, heart disease, and other smoking-related ailments. Plaintiff asserts that his shortness of breath is a symptom of the more severe and developing chronic condition of asthma. Like Barclay White's claim for money withheld by Battelle due to unfinished work, plaintiff's complaint of shortness of breath and "other smoking-related ailments" put defendants on notice of a potential asthma claim. Thus, the court finds that GEO defendants had notice of plaintiff's asthma complaint prior to the date they filed their third motion for summary judgment. <u>See</u> <u>Oldham v. Beck</u>, 75 F. App'x 122, 125 (4th Cir. Aug. 29, 2003) (finding inmate properly alleged an Eighth Amendment excessive exposure to tobacco smoke claim

---

[5] The disputed change orders arose from eleven potential change order notifications. <u>Id.</u> at 563.

where he alleged exposure caused him various serious health problems and caused existing health problems to worsen).

Moreover, subsequent to the adjudication of GEO defendants' last motion for summary judgment, the court became aware that plaintiff has not had the opportunity to engage in discovery. The court finds that dismissing plaintiff's negligence claim before he has the opportunity to engage in discovery, especially where plaintiff argues that discovery is needed to demonstrate the elements of his claim, would be unfairly prejudicial. Based upon the foregoing, GEO defendants have not demonstrated that this court erred in ruling on its third motion for summary judgment with respect to this issue, and their request for reconsideration is DENIED.

### 2. Failure to Establish Causation

GEO defendants assert plaintiff has not met his burden to establish causation, and the court should reconsider its denial of GEO defendants' motion for summary judgment asserting plaintiff lacked causation. In response, plaintiff argues, *inter alia*, that he has not had the opportunity to engage in discovery and that discovery is necessary to present facts governing causation. In light of this newly raised argument, the court determines whether discovery is necessary before addressing the causation argument raised in GEO defendants' motion for reconsideration.

"As a general rule, summary judgment is appropriate only after adequate time for discovery." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996) (quotation omitted). Rule 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Rule 56(d) allows a court to delay ruling on a motion for summary judgment if the nonmoving party requires discovery to identify "facts essential to justify the party's opposition." Crawford-El v. Britton, 523 U.S. 574, 599 n.20 (1998) (quotation omitted). However, "Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery." Young v. UPS, No. DKC 08-2586, 2011 WL 665321, *20 (D. Md. Feb. 14, 2011). "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be essential to [the] opposition." Scott v. Nuvell Fin. Servs., No. JFM-09-3110, 2011 WL 2222307, *3 (D. Md. June 7, 2011) (quotation omitted). A non-moving party's Rule 56(d) request for discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." Strag v. Bd. of Trs., Craven Cmty. Coll., 55 F.3d 943, 954 (4th Cir. 1995).

Here, plaintiff submitted an affidavit stating that discovery is necessary to present facts regarding causation and that the relevant information is under the control of Rivers.[6] Pl.'s Resp. to GEO Def.'s Mot. for Reconsideration, Aff. ¶ 3. The development of facts regarding causation is essential to plaintiff's action. See First Federal Sav. and Loan Ass'n of Brainerd v. Equitable Bank, Nat., Nos. H-86-301, H-86-3531, 1988 WL 167703, *5 (D. Md. Apr. 5, 1988) (citing Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co, 381 F.2d 245, 249 (4th Cir. 1967)). Accordingly, the court finds that plaintiff has presented good cause to delay ruling on this issue until after plaintiff has had

---

[6] GEO defendants assert that the court allowed plaintiff to create a genuine issue of material fact by submitting a document that did not exist until after the discovery period ended. However, the parties subsequently represented that plaintiff did not engage in discovery and the court allowed all parties a new period of discovery to commence after the disposition of the instant motions.

the opportunity to engage in meaningful discovery. Based upon the foregoing, the court finds that plaintiff is entitled to engage in discovery prior to addressing GEO defendants' causation argument. Accordingly, the GEO defendants' motion for reconsideration is denied.

### 3. Plaintiff's Statement to Medical Staff

GEO defendants claim the court erred by allowing plaintiff to utilize his own statement to Rivers medical staff, that "tobacco smoke is a trigger" to his asthma, in finding a genuine issue of material fact with respect to the causation element of plaintiff's negligence claim.[7] In support of their argument, GEO defendants submit an affidavit from Shannon Dunlow ("Dunlow"), a Health Services Administrator employed by Rivers. Dunlow Decl. ¶ 2. Dunlow states that as part of her position as Health Services Administrator, she has a familiarity with the process utilized by the Rivers medical staff to document the care provided to Rivers' inmates. Id. ¶ 3. Dunlow states that the "Subjective" portion of the Rivers medical report is an area where the medical staff records inmates' medical complaints, and does not contain findings, diagnoses, or treatment plans. Id. ¶ 5. Based upon this information, Dunlow states that the statement indicating that "tobacco smoke is a trigger" for plaintiff's asthma found in the subjective portion of plaintiff's December 31, 2010, medical record, is plaintiff's own personal opinion, and not a finding or opinion by the Rivers' staff.[8] Id. ¶ 6.

---

[7] The court notes that in plaintiff's July 26, 2010, responses to GEO defendants' request for first set of interrogatories, he admits that a doctor has not told him that his headaches, shortness of breath, eye irritation, nasal irritation, chest pains, and exacerbation of his allergies are caused by his exposure to second-hand smoke while incarcerated at Rivers. Plaintiff also admits that he has not been diagnosed with heart disease, lung cancer, throat cancer, or emphysema. Although the court finds this evidence persuasive with respect to the GEO defendants' contention that plaintiff lacks evidence of causation, plaintiff has not engaged in discovery and has submitted some evidence in the form of a medical record indicating that his asthma is caused by second-hand smoke, which precludes a finding of summary judgment at this time.

[8] GEO defendants have not provided an affidavit or declaration from the physician who treated plaintiff on December 31, 2010.

In response to the GEO defendants' argument, plaintiff asserts that the statement regarding his asthma was not simply a recitation of his own opinion. Plaintiff further argues that GEO defendants have improperly relied upon the declaration of an administrator, and not the treating physician, to interpret the treating physician's comments in plaintiff's medical record. Plaintiff asserts that this creates a genuine issue of material fact. The court agrees, and moreover finds that discovery likely will resolve this issue. For the foregoing reasons, the court finds that the GEO defendants have not satisfied their burden to show that the court's prior ruling was clearly erroneous, and their motion for reconsideration is denied.

C.   Motion for Certification for Immediate Appeal

Title 28 U.S.C. § 1292(b) provides, in relevant part:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, [she] shall so state in writing in such order.

Section 1292(b) "should be used sparingly," and "its requirements must be strictly construed." Myles v. Laffitte, 881 F.2d 125, 127 (4th Cir. 1989). The Fourth Circuit has admonished that "piecemeal review of decisions that are but steps toward final judgments on the merits are to be avoided, because they can be effectively and more efficiently reviewed together in one appeal from the final judgments." James v. Jacobson, 6 F.3d 233, 237 (4th Cir. 1993).

Following the language of the statute, a district court must consider three factors in ruling on a motion to certify interlocutory appeal: (1) whether the order involves a "controlling question of law"; (2) whether there is "substantial ground for difference of opinion" with respect to the

15

applicable legal principles; and (3) whether an immediate appeal might "materially advance the ultimate termination of the litigation." See Fannin v. CSX Transp., Inc., 873 F.2d 1438, 1989 WL 42583, *1-2 (4th Cir. 1989) (quoting § 1292(b)).

Applying the three factors to the instant action, the court finds that although GEO defendants' motion raises potential issues of controlling law, particularly the causation issue, the court finds there is no "substantial ground for difference of opinion." Moreover, the parties have represented to the court that plaintiff did not serve any discovery upon any defendants and the parties jointly moved to reopen the discovery period. The court allowed plaintiff's joint motion and a five-month period of discovery to begin at the conclusion of the matters pending before the court. Accordingly, it would be premature and inappropriate to certify such an order when plaintiff has not had the opportunity to engage in discovery. See Tello v. Dean Witter Reynolds, Inc., 410 F.3d 1275, 1294 (11th Cir. 2005). Moreover, a § 1292 "interlocutory appeal must be based on exceptional circumstances that justify a departure from the basic policy limiting appellate review to final judgements." Terry v. June, 368 F. Supp. 2d 538, 539 (W.D. Va. 2005) (citations omitted). No such circumstances exist here. Thus, GEO defendants' motion for certification for immediate appeal does not meet the requirements of § 1292(b) and is DENIED.

## CONCLUSION

For the foregoing reasons, the court GRANTS BOP defendants' motion for summary judgment (DE # 167), but denies GEO defendants' motion for reconsideration and motion for certification for immediate appeal (DE # 171). The court now lifts the stay of discovery and finds

16

it appropriate to set parameters for discovery in this action. All discovery shall be commenced or served in time to be completed by April 16, 2012. All motions, including dispositive ones, shall be filed by May 16, 2012. Thereafter, a trial date certain will be set.

SO ORDERED, this the 18th day of October, 2011.

_____
LOUISE W. FLANAGAN
United States District Judge