IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:09-CT-3115-FL

| | |
|---|---|
| ANTHONY RODERICK PHILLIP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| GEO GROUP, INC.; GEORGE E. SNYDER; WALLACE BRANCH; TARA ALEXANDER; JOHN WHITE; BUREAU OF PRISONS; HARLEY LAPPIN; and JONATHAN MINER, | ) ) ) ) ) |
| | ) |
| Defendants. | ) |

This matter comes now before the court on the motion for summary judgment (DE # 192) pursuant to Rule 56 of the Federal Rules of Civil Procedure, on behalf of defendants GEO Group, Inc. ("GEO Group"), Jonathan Miner ("Miner"), George Snyder ("Snyder"), Wallace Branch ("Branch"), Tara Alexander ("Alexander"), and John White ("White") (collectively sometimes referred to as the "GEO defendants").[1] Also before the court is plaintiff's motion to appoint counsel (DE # 198). Both motions were fully briefed. In this posture, issues raised are ripe for adjudication. For the following reasons, the court denies plaintiff's motion to appoint counsel and grants GEO defendants' motion for summary judgment.

---

[1] GEO Group is a private corporation which operates Rivers Correctional Institution ("Rivers"), a privately run facility where plaintiff resides. Miner, Snyder, Branch, White, and Alexander are current or former employees of GEO Group. Miner and Snyder previously were employed at Rivers as wardens. Branch is an associate warden there. Alexander is a unit manager and White is an inmate systems manager at Rivers.

## STATEMENT OF THE CASE

The court has extensively detailed the procedural posture of this action in prior orders. For ease of reference, pertinent portion of the statement of the case set forth in October 18, 2011, order, is restated here:

> Pursuant to plaintiff's September 2, 2009, amended complaint, he alleges an action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), against [the Federal Bureau of Prisons ("BOP") and Harley Lappin ("Lappin") (collectively "BOP defendants")] based upon their alleged deliberate indifference to second-hand smoke at Rivers Correctional Institution ("Rivers"). Plaintiff's amended complaint also alleges an equal protection and a negligence claim against BOP defendants. Finally, plaintiff, in his amended complaint, asserts a negligence claim, based upon diversity jurisdiction under 28 U.S.C. § 1332, against GEO defendants for confining him at a facility that permits smoking. Plaintiff alleges GEO defendants are liable pursuant to the doctrine of respondeat superior and that GEO defendants breached their contract with BOP. Plaintiff's amended complaint alleges defendants' conduct resulted in "headaches, shortness of breath, irritation of his eyes and nose, chest pains and exacerbation of his allergies," as well as "an increased risk of contracting lung and heart disease and other ailments stemming from Second Hand Smoke, both now and in the future." Am. Compl. p. 8.
>
> Both GEO and BOP defendants filed dispositive motions seeking dismissal of plaintiff's claims, which were fully briefed. BOP defendants' motion to dismiss argued that, pursuant to Rule 12(b)(1), plaintiff lacked subject matter jurisdiction, and that pursuant to Rule 12(b)(6), plaintiff failed to state a claim upon which relief may be granted. In response to BOP defendants' motion to dismiss, plaintiff consented to dismissal of his equal protection and negligence claims, stating that he seeks only declaratory and injunctive relief based upon his Eighth Amendment claim. On March 31, 2011, the court denied BOP defendants' motion to dismiss and allowed plaintiff to voluntarily dismiss his equal protection and negligence claims against BOP defendants.
>
> GEO defendants filed a motion for summary judgment, arguing that plaintiff's negligence claim fails because plaintiff was unable to establish proximate cause. Specifically, GEO defendants argue

2

plaintiff failed to provide the necessary expert testimony to establish that the alleged exposure to second-hand smoke proximately caused his alleged injuries. In its March 31, 2011, order, the court denied GEO defendants' motion on the grounds that plaintiff alleged a genuine issue of material fact when he attached medical records to his sur-reply stating that "tobacco smoke is a trigger" to his asthma. (D.E. # 162, Attach. p. 20.) The court then appointed North Carolina Prisoner Legal Services [("NCPLS")]to represent plaintiff.

On April 7, 2011, BOP defendants filed a motion for summary judgment, arguing that plaintiff's Eighth Amendment claim against them for injunctive and declaratory relief must be dismissed as moot. Plaintiff responded that his action against these defendants is not moot because voluntary cessation of wrongful behavior after a lawsuit is filed does not automatically moot a case or controversy. Plaintiff also alleges that there is an exception to the mootness doctrine where the dispute is capable of repetition, yet evading review.

On April 11, 2011, plaintiff, BOP defendants, and GEO defendants filed a joint motion to reopen discovery, asserting that plaintiff previously was not represented by counsel and did not serve any discovery on any defendants. The court granted the joint motion and allowed a five-month period of discovery. The court, however, stayed discovery pending its decision on the instant matters.

On April 28, 2011, GEO defendants filed a motion for reconsideration and motion for certification for immediate appeal. . . . . The matter [was] fully briefed.

The court, on October 18, 2011, entered order granting BOP defendants' motion for summary judgment, but denying GEO defendants' motion for reconsideration and motion for certification for immediate appeal. The court also lifted the stay of discovery and entered a case management schedule governing discovery and dispositive motions.

On July 30, 2012, NCPLS attorney Tod Leaven ("Leaven") moved to withdraw as plaintiff's counsel in this action. In support of his motion, Leaven argued that NCPLS does not receive funding to represent federal inmates and that he was "unable to further assist [plaintiff] because such

3

assistance requires the expenditure of money which NCPLS is precluded from expending on inmates in federal custody." Mot. to Withdraw. p. 1. The court subsequently granted Leaven's motion, and plaintiff now is proceeding with this action *pro se*.

Also on July 30, 2012, GEO defendants filed the instant motion for summary judgment. GEO defendants argue that plaintiff cannot establish the necessary elements of his negligence claim because he cannot show that they breached a duty owed to him or that his alleged asthma, or any other injuries, were caused by exposure to second-hand smoke at Rivers. GEO defendants also argue that plaintiff is not an intended third party beneficiary of the Rivers contract because neither the Rivers contract, nor the National Capital Revitalization and Self-Government Improvement Act of 1997 demonstrates an express or implied intent to benefit Rivers inmates. Finally, GEO defendants argue that plaintiff's respondeat superior claim fails because he cannot show negligence by any GEO employee.

## STATEMENT OF FACTS

The undisputed facts in this case are as follows. Effective January 11, 2002, Rivers had in place a tobacco/smoking policy, Rivers Policy No. 03.016 (the "former smoking policy"), which permitted inmates to use tobacco products only in designated outdoor areas. Rivers Policy No. 03.016, sec. IV. Specifically, the former smoking policy allowed inmates to smoke in five designated, and clearly identified, outdoor areas in the two and one half (2.5) acre Rivers' recreation yard. Snyder Aff. ¶ 6. Four of the designated smoking areas were located on each of the four sides of the fenced recreation yard. Id. The fifth designated smoking area was the outdoor track and baseball field. Id. ¶ 7. Inmates accessed the outdoor track and baseball field through one of two doors to the Rivers facility. Id.

At the time plaintiff was incarcerated at Rivers, there were procedures in place to enforce the former smoking policy. Specifically, in the event that a Rivers staff member observed a violation of the former smoking policy, he/she would generate an incident report, and then another Rivers staff member would investigate the incident to determine whether the allegations supporting the alleged incident could be substantiated. Miner Aff. ¶ 6. Id. If so, the incident either would be referred to the inmate's unit disciplinary committee or to the facility's disciplinary hearing officer. Id. Any inmate found to have violated the former smoking policy would be sanctioned. Id. While plaintiff was at Rivers, there were nineteen (19) violations of the former smoking policy. Id. ¶ 8. Of those violations, ten (10) were for smoking outside of designated smoking areas. Id. ¶ 9. The remainder of the violations were for unauthorized possession of tobacco products or smoking paraphernalia. Id.

Effective November 1, 2010, Rivers' smoking policy changed with the enactment of policy No. 09.005-Smoke/Tobacco Free Environment (the "new smoking policy"). Id. ¶¶ 4, 5. The new smoking policy prohibited the use of tobacco products in the indoor or outdoor areas at Rivers, with the exception of a staff designated area outside of the facility. Id. Ex. A. The same procedures for enforcing the former smoking policy also applied to the new smoking policy. Since November 1, 2010, there have been twenty-three (23) violations of the new smoking policy. Id. ¶ 10. Four of the ten (10) violations were for the use of tobacco products, and the remaining violations were for unauthorized possession of tobacco products or smoking paraphernalia. Id.

## DISCUSSION

The court turns its attention first to plaintiff's renewed effort for appointment of counsel. Discussion of defendants' motion follows.

5

A.      Motion to Appoint Counsel

Plaintiff requests that the court appoint counsel. Generally, there is no constitutional right to counsel in civil cases, and courts should exercise their discretion to appoint counsel for *pro se* civil litigants "only in exceptional cases." Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975). The existence of exceptional circumstances justifying appointment of counsel depends upon "the type and complexity of the case, and the abilities of the individuals bringing it." Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa, 490 U.S. 296 (1989) (quoting Branch v. Cole, 686 F.2d 264 (5th Cir. 1982)); see also Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir. 1978) ("If it is apparent . . . that a pro se litigant has a colorable claim but lacks capacity to present it, the district court should appoint counsel to assist him.").

On March 31, 2011, the court appointed NCPLS to represent plaintiff. On July 30, 2012, NCPLS filed a motion to withdraw as counsel citing financial constraints due to the fact that it does not receive funding to represent federal inmates. The court granted the motion, and plaintiff now seeks alternative counsel asserting that he does not have the legal skills to litigate this matter.

Under the circumstances presented, which include among other things a narrowed set of issues requiring plaintiff's address, the court disagrees. After his appointed counsel withdrew from this action, plaintiff filed a coherent response to GEO defendants' motion for summary judgment which reflects his ability to proceed with this action *pro se*.

For all of these reasons, the court finds that there are no exceptional circumstances requiring appointment of counsel at this time. Plaintiff's motion to appoint alternative counsel is DENIED.

B.　　Motion for Summary Judgment

　　1.　　Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250. For a non-moving party to present a genuine issue of material fact, "[c]onclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of [the non-moving party's] case." Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002) (internal quotation marks omitted).

　　2.　　Analysis

　　　　a.　　Negligence

Because this is a diversity action, North Carolina law governs plaintiff's negligence claim. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co., 433 F.3d 365, 369 (4th Cir. 2005). North Carolina law requires that "in order to prevail in a negligence action, [a plaintiff] must offer evidence of the essential elements of negligence: duty, breach of duty, proximate cause, and damages." Camalier v. Jeffries, 340 N.C. 699, 460 S.E.2d 133, 136 (1995); Hart v. Ivey, 332 N.C. 299, 420 S.E.2d 174 (1992) ("[a]ctionable negligence is the failure to exercise the degree of care

7

which a reasonable and prudent person would exercise under similar conditions. A defendant is liable for his negligence if the negligence is the proximate cause of injury to a person to whom the defendant is under a duty to use reasonable care." (internal citations omitted)).

          1.          Breach of Duty

The court first must determine whether GEO defendants breached a duty of reasonable care owed to plaintiff. "A duty is an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." Estate of Mullis by Dixon v. Monroe Oil Co., 349 N.C. 196, 204, 505 S.E.2d 131, 136-37 (1998) (citations and internal quotations omitted); Hart v. Ivey, 332 N.C. 299, 305, 505 S.E.2d 174, 177-178 (1992) (finding a defendant has a duty "to exercise that degree of care which a reasonable and prudent person would exercise under similar conditions."). To demonstrate breach of a duty, the plaintiff must show that the defendant failed to "'conform to the standard required.'" Messing v. CSX Transp., Inc., 172 F.3d 44, at *2 (4th Cir. Jan. 15, 1999) (quoting Davis v. North Carolina Dept. of Human Resources, 121 N.C. App. 105, 465 S.E.2d 2, 6, (1995)). In general, "[t]he government is not an insurer of the safety of a prisoner." Jones v. United States, 534 F.2d 53, 54 (5th Cir. 1976). Rather, "a prison official is liable when he knows of, or in the exercise of reasonable care should anticipate, danger to the prisoner, and with such knowledge or anticipation fails to take the proper precautions to safeguard his prisoners. " State ex. rel. Williams v. Adams, 288 N.C. 501, 219 S.E.2d 198, 200 (1975) (internal quotation omitted); Taylor v. North Carolina Dep't of Correction, 88 N.C. App. 446, 448, 363 S.E.2d 868, 871 (1988) ("[D]efendant [prison officials] had a duty of reasonable care to protect the plaintiff from reasonably foreseeable harm." )

Plaintiff generally alleges that GEO defendants breached their duty of care because they allowed tobacco products to be sold at the Rivers' commissary, installed cigarette lighters near the gates leading to the housing units, and did not enforce the smoking policies. Plaintiff also alleges that the individual GEO defendants breached a duty of care owed to plaintiff.[2] The court will address these issues in turn.

The court begins with plaintiff's contention that the sale of tobacco products at the Rivers commissary and installation of cigarette lighters near the housing unit gates resulted in a breach of GEO defendants' duty of care. The evidence reflects that Rivers implemented a complete smoking and tobacco ban on November 1, 2010. See Miner Decl. Ex. A; Rivers Policy No. 09.005. Prior to that date, the former smoking policy permitted smoking only in designated outdoor areas. Both Rivers' smoking policies comply/complied with BOP's smoking policy, which permits a warden to "designate only outdoor smoking areas for general inmate use." BOP Program Statement P1640.04, Rule 8(b); 28 C.F.R. § 551.162. Further, BOP policy does not prohibit individual wardens from exercising their discretion to permit the sale of tobacco products. See id.[3] Accordingly, the fact that other BOP facilities prohibited smoking or the sale of tobacco products does not indicate that the former smoking policy violated BOP policy.

As for plaintiff's general allegation that prison officials did not enforce the smoking policy, he has not provided sufficient allegations to support this claim. Plaintiff does not describe any

---

[2] The court notes that plaintiff does not allege that Miner breached any duty of care owed to him.

[3] The court notes that in support of his argument that Rivers' sale of tobacco products at its commissary violated BOP policy, plaintiff submitted evidence that tobacco products are not sold in the commissaries at the Federal Correctional Institution at Coleman and the Federal Correctional Institution at Butner (both BOP facilities). However, as stated, BOP policy did not prohibit the sale of tobacco products, but left such decisions to the discretion of the wardens. The fact that two BOP facilities did not permit the sale of tobacco products does not demonstrate that the Rivers policy regarding tobacco sales violated BOP policy.

9

particular instance when smoking occurred in prohibited areas or any specific occasion at which a particular GEO defendant failed to enforce either smoking policy. In contrast to plaintiff's allegations, the record reflects that Rivers prison officials' enforced the relevant smoking policies, and that failure to do so would result in disciplinary action, including termination. Snyder Decl. ¶ 16; Miner Decl. ¶ 11.

The court now turns to plaintiff's allegations regarding the individual defendants. Beginning with Snyder, plaintiff alleges that he breached his duty by approving the former smoking policy, which allowed smoking in designated outdoor areas. However, Snyder's implementation of the former smoking policy was consistent with federal law and BOP policy. See BOP Program Statement P1640.04, Rule 8(b); 28 C.F.R. § 551.162; Snyder Decl. ¶ 3 and Ex. A.

Plaintiff next asserts that Branch "has done nothing to eliminate Plaintiff's exposure to the harmful effects of Second and Third hand smoke." First. Am. Compl. ¶ 39. Plaintiff's only alleged contact with Branch occurred when Branch processed his Step I administrative remedy request for plaintiff's February 18, 2009 grievance. Branch Decl. ¶ 7. The record reflects that Branch reviewed and investigated plaintiff's complaint and concluded that the former smoking policy was consistent with federal law and policy. Id. ¶¶ 7-13. There is no evidence that Branch conducted an inadequate investigation or that the contested policy was contrary to law or BOP policy.

As for Alexander and White, plaintiff attempts to hold them responsible for conduct that was outside the scope of their duties. For instance, plaintiff asserts that Alexander authorized non-smoking inmates to be housed with smoking inmates, and did not prevent inmates from smoking during evening lock-down hours. First Am. Compl. ¶ 36. The record, however, reflects that Alexander was not responsible for assigning inmates to cells, and that she does not work at Rivers

10

during evening lock-down hours. Alexander Decl. ¶¶ 3, 8. Similarly, plaintiff claims White, an inmate systems manager at Rivers, intentionally placed a detainer on him to prolong his incarceration and exposure to second-hand smoke. First Am. Compl. ¶ 38. However, White does not have the authority to issue detainers, but instead processes detainers that are issued by governmental agencies.[4] White Decl. ¶ 4.

From the above-stated evidence, the court finds that GEO defendants took reasonable steps to ensure that Rivers inmates were not exposed to second-hand smoke. Plaintiff has not presented any evidence to the contrary. Accordingly, the court finds that plaintiff has not established any breach of duty.

2. Proximate Cause

Even if plaintiff could establish that GEO defendants breached their duty of care, plaintiff still would not be entitled to relief because he has not established that his alleged exposure to second-hand smoke at Rivers was a proximate cause of his alleged asthma, or any other alleged injury. Pursuant to the law in North Carolina, proximate cause is:

> a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred, and one from which a person of ordinary prudence could have reasonably foreseen that such a result, or consequence of a generally injurious nature, was probable under all the facts as they existed.

Adams v. Mills, 312 N.C. 181, 322 S.E.2d 164, 172 (1984) (internal quotation omitted).

Generally, proximate cause is an issue of fact for the jury. See Olds v. United States, No. 10-6683, 2012 WL 1130604, at *2 (4th Cir. Apr. 5, 2012); Gaines v. Cumberland County Hospital

---

[4] The court notes that the Bureau of Immigration and Customs Enforcement issued a detainer against plaintiff. White Decl. ¶ 5.

11

System, Inc., 203 N.C. App, 692 S.E.2d 119, 122 (2010) (quotation omitted). However, "[i]n cases involving 'complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of an injury.' " Holley v. ACTS, Inc, 357 N.C. 228, 232, 581 S.E.2d 750, 753 (2003) (quoting Click v. Pilot Freight Carriers, Inc., 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980)); Day v. Brant, 721 S.E.2d 238, 246 (N.C. App. 2012) (North Carolina courts "rely on medical experts to show medical causation because the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen[.]") (citation and internal quotation omitted); Young v. Hickory Business Furniture, 353 N.C. 227, 231, 538 S.E.2d 912, 915 (2000) (holding that expert testimony is required "[d]ue to the complexities of medical science, particularly with respect to diagnosis, methodology, and determination of causation . . . ."); Miller v. Lucas, 267 N.C. 1, 15, 147 S.E.2d 537, 547 (1966) ("Where a layman can have no well-founded knowledge and can do no more than indulge in mere speculation (as to the cause of a physical condition), there is no proper foundation for a finding by the trier without expert medical testimony.") (internal quotation omitted); Gilkin v. Burbage, 263 N.C. 317, 324-25, 139 S.E.2d 753, 759-60 (1965) ("Where, however, the subject matter-for example, a ruptured disc-is 'so far removed from the usual and ordinary experience of the average man that expert knowledge is essential to the formation of an intelligent opinion, only an expert can competently give opinion evidence as to the causes of death, disease, or a physical condition.' "); Hood v. Kennedy, 5 N.C. App. 203, 206, 167 S.E.2d 874, 875 (1969) (requiring expert medical testimony to determine whether an injury is of a permanent nature).

North Carolina courts have applied the requirement for expert medical testimony to actions in which a party claims to have been injured by an airborne toxin. For instance, the North Carolina Court of Appeals in Anderson v. Housing Authority of City of Raleigh, 169 N.C. App. 167, 609 S.E.2d 426 (2005), found that expert testimony was required where plaintiffs, tenants in a housing complex, asserted injury from alleged carbon monoxide exposure from improperly installed gas boilers. The court in Anderson found that expert testimony as to causation was necessary where, as in that case, "a layperson can do no more than speculate as to the cause of a physical condition." Id. at 172; Miller v. Mandrin Homes, Ltd., 305 F. App'x 976, 980 (4th Cir. 2009) ("The Millers also produced no evidence of medical causation . . . . In short, the Millers have suggested only possibility, rather than probability, on an element essential to their claims. The district court properly granted summary judgment."); see also, Huskins v. United Feldspar Corp., 241 N.C. 128, 129, 84 S.E.2d 645, 646 (1954) (requiring expert medical testimony to establish causation in a workers compensation case seeking compensation for alleged disablement resulting from silicosis); Allen v. Pennsylvania Eng'g Corp, 102 F.3d 194, 199 (5th Cir. 1996) (concluding that "[s]cientific knowledge of the harmful levels of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities, are minimal facts necessary to sustain the plaintiffs' burden in a toxic tort case.") Likewise, the United States District Court for the Eastern District of Pennsylvania has acknowledged the need for medical evidence or expert testimony to establish the causation element of a negligence claim in relation to second-hand smoke exposure. See Abuhouran v. United States, 595 F. Supp. 2d 588, 595 (E.D. Pa. 2009) ("Here, Abuhouran's negligence claim fails because he presents neither medical evidence nor expert witnesses to establish a causal connection between his

13

exposure to [environmental tobacco smoke] and his alleged injury."), aff'd, 389 F. App'x 179 (3d Cir. 2010).

The causation element of plaintiff's negligence claim has been actively litigated throughout the course of this action. GEO defendants initially argued that plaintiff's medical records failed to demonstrate causation, but the court rejected this argument. GEO defendants next argued that plaintiff failed to provide the necessary expert testimony to establish that the alleged exposure to second-hand smoke at Rivers proximately caused his alleged injuries. However, the court found that there was a genuine issue of material fact with respect to the causation element of plaintiff's negligence claim based upon a December 31, 2010, Rivers medical record provided by plaintiff which contained the statement that "tobacco smoke is a trigger" to his asthma. Pl.'s Sur-reply to Def.s' Third Mot. for Summary J. p. 7.

GEO defendants, in their fourth motion for summary judgment again attack the causation element of plaintiff's negligence claim. GEO defendants assert that plaintiff's December 31, 2010, statement that "tobacco smoke is a trigger" to his asthma is not evidence that his exposure to second-hand smoke at Rivers caused his asthma. Rather, GEO defendants contend that the statement is nothing more than plaintiff's own opinion contained in a medical record. In support of their argument, GEO defendants submitted a declaration from Dr. Kia Sewell, the physician at Rivers. Sewell Decl. ¶ 2. Sewell states that the statement that tobacco smoke triggered his asthma contained in plaintiff's December 31, 2010, medical record was not an objective finding by medical staff regarding plaintiff's medical condition, but was plaintiff's subjective complaint. Id. ¶¶ 5-6. Sewell further states that there is no finding by medical personnel that plaintiff's asthma, or any other condition, was caused by an exposure to tobacco smoke. Id. ¶ 7. In light of Sewell's testimony, the

14

court finds that plaintiff's medical records are not sufficient to establish that his exposure to tobacco smoke at Rivers is a proximate cause of his asthma and other injuries.[5]

Plaintiff, alternatively, relies upon the 2010 Surgeon General Report to establish that his asthma was caused by his exposure to second-hand smoke at Rivers. However, the 2010 Surgeon General Report explains that although the <u>active smoking</u> of tobacco products has been linked to asthma, "the evidence has not reached a level of certainty sufficient to warrant a conclusion of cause and effect." Second Numbers Decl. Ex. A at p. 437. More importantly, the 2010 Surgeon General Report does not assist plaintiff in establishing that his exposure to second-hand smoke at Rivers caused his asthma, or any other medical condition. Rather, plaintiff relies upon his own lay opinion that his exposure to second-hand smoke at Rivers caused his alleged injuries. <u>See</u>, First Numbers Decl. Ex. A (Plaintiff's response to first request for admission states that no doctor has told him that his headaches, shortness of breath, eye irritation, nose irritation, chest pain, or allergies were caused by his exposure to second-hand smoke).

Because plaintiff has not established that GEO defendants breached any duty of care and because plaintiff has not met his burden of producing evidence, beyond mere speculation, that his exposure to second-hand smoke at Rivers caused any of his alleged medical conditions, the court finds that plaintiff has not established the required element of proximate cause for his negligence claim. Thus, GEO defendants' motion for summary judgment is GRANTED as to this claim. Further, in light of the fact that plaintiff has not established negligence, his claim based upon

---

[5] GEO defendants previously submitted an affidavit from Shannon Dunlow ("Dunlow"), a Health Services Administrator employed by Rivers, stating that the statement contained in plaintiff's December 31, 2010 medical record was plaintiff's own personal opinion, and not a finding or opinion by the Rivers' staff. Dunlow Decl. ¶ 6. The court, however, found that there was a genuine issue of material fact because GEO defendants improperly relied upon the declaration of an administrator, and not the treating physician, to interpret the treating physician's comments in plaintiff's medical record.

respondeat superior also is DISMISSED. See Van Landingham v. Sewing Machine Co., 207 N.C. 355, 357, 177 S.E. 126, 127 (1934).

### 3. Appointment of Expert

Although plaintiff does not have a pending motion for appointment of an expert witness, the court finds it appropriate to briefly address the issue. Federal Rule of Civil Procedure 706(a) authorizes the district court to appoint an expert witness. Generally, "Rule 706 contemplates the appointment of an expert to aid the court," and not for the purposes of enabling a particular litigant to prove his case. Hannah v. United States, 523 F.3d 597, 600-01 (5th Cir. 2008).[6] The district court has the discretion to determine whether the appointment of an expert pursuant to Rule 706(a) is appropriate. See Patel v. United States, 399 F. App'x 355, at *3 (10th Cir. Oct. 19, 2010) (citation omitted); United States Marshals Serv. v. Means, 741 F.2d 1053, 1059 (8th Cir. 1984) (finding that the "discretionary" authority to appoint an expert in a case pursuant to Rule 706 "is to be exercised only under compelling circumstances.")

In this case, plaintiff previously acknowledged the need for an expert to establish the health effects of exposure to second-hand smoke. Pl.'s Resp. to Def.s' Third Mot. for Summary J. p. 23. Plaintiff further stated that he has searched for an expert in the field of environmental toxicology, but has not been able to locate an expert witness. Accordingly, the appointment of an expert in this case primarily would serve the purpose of assisting plaintiff in presenting his case, which is not the appropriate purpose of appointing an expert. Moreover, there is no pending request for the

---

[6] The court notes that there is no case law or statute providing for the payment of expenses such as expert witness fees on behalf of an indigent litigant in a civil suit for damages. See Bradshaw v. Lappin, No. 11-1109, 2012 WL 2045762, at *5 (10th Cir. June 7, 2012) (citing Malik v. Lavelley, 994 F.2d 90, 90 (2d Cir. 1993)); Reyna v. Weber, No. Civ. 11-4044, 2012 WL 2999768, at *2 (D.S.D. June 12, 2012) ("The plain language of section 1915 does not provide for the appointment of expert witnesses to aid an indigent litigant.")

16

appointment of an expert witness. Based upon the foregoing, the court determines that it is not appropriate to appoint an expert pursuant to Rule 706(a).

        b.        Third-Party Beneficiary

Plaintiff does not oppose GEO defendants' motion for summary judgment on his third-party beneficiary claim. To the extent plaintiff seeks to proceed with his third-party beneficiary claim against GEO defendants, the court rejects plaintiff's claim pursuant to the court's analysis set forth in Mathis v. GEO Group, Inc., No. 2:08-CT-21-D, at pp. 39-40 (E.D.N.C. Nov. 9, 2009). For these reasons, the court GRANTS GEO defendants' motion for summary judgment for this claim.

## CONCLUSION

For the foregoing reasons, the court DENIES plaintiff's motion to appoint counsel (DE # 198). The court GRANTS GEO defendants' motion for summary judgment (DE # 192). The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 5th day of November, 2012.

*[signature]*

LOUISE W. FLANAGAN  
United States District Judge